I should say, I forgot to say it yesterday, because we see you so often, that the panel of this court is privileged to have with us today one of our colleagues from the district court, Judge Lewis Pollack, but we see him so often we've just sort of adopted him and he's now third circuit judge. But we're delighted to have him as Judge Greenway and I. Thank you, Judge Sloboda. There's no place I'd rather be an adoptee of than you. Well, good. Okay, we'll hear counsel in the United States v. Outram. Mr. Kress, is that how you pronounce his name? I believe it's Outram, but I'm not 100% sure. We weren't sure either. Okay. Good afternoon, Your Honors. May it please the court, my name is Ronald Krauss. I'm an assistant federal public defender for the Middle District of Pennsylvania and I represent the appellate Roderick Outram. With the court's permission, I'd like to reserve two minutes for rebuttal. Two minutes, that's fine. The issue that the court certified in this case was whether federal counsel was ineffective for not attacking an in absentia deportation order, which was the predicate for his illegal reentry conviction. And part and parcel of that issue is whether or not the district court erred in not holding a hearing on the habeas petition. Now, I think there are three points during the course of this litigation where federal trial counsel was ineffective. Ineffective meeting meets the first test of the Strickland prong of falling underneath a reasonable standard of professional performance. Do we deal with Strickland before we deal with 1326? Well, I think Strickland, if we're assessing whether or not federal counsel is ineffective, I think the Strickland standard is what we look at. No, I understand. I'm just talking about order of how we look at the problem. Do we look at 1326 first or do we look at Strickland first? I'm happy to go wherever Your Honor would like. Okay. That's a good lawyer. Why don't you continue for the moment. Wherever you're leading us. I was saying I think there are three points in the litigation where federal counsel fell down in not attacking the in absentia deportation order. The first and the most critical and the most obvious was when Outram was first indicted. And at that point, between then and when he ultimately pled and was sentenced, attacking this deportation order collaterally was obvious, both as to a matter of law and as to the facts. As to the law, a Lexis search at that time would have very easily picked up cases involving collateral attacks of underlying deportation orders. The Third Circuit first enabled that in the case of U.S. v. Bowles in 1964. The Supreme Court held the same thing in U.S. v. Mendoza-Lopez in 1987. And then there was a Second Circuit case that came out just shortly. Actually, it was a day that Outram was indicted, which held that very same thing. Well, what would have been the basis for his attack? The basis for attack was that he could have satisfied the three requirements of Section 1326. By arguing what? Well, there are three requirements, and now we get to Judge Penaway's 1326 argument. There are three requirements for establishing the 1326 standard. The first requirement is that Outram would have to exhaust his administrative remedies. Do you agree with the proposition that if you don't satisfy all three 1326 prerequisites, that your ineffective assistance of counsel claim has to go by the wayside? Yes. Okay, go ahead. The first requirement is exhaustion of administrative remedies. That's really not an issue here. The second requirement is that he has to establish that the deportation proceedings deprived him of an opportunity for judicial review. And here there were two avenues that federal counsel could have gone down. The first was that ineffective immigration counsel deprives meaningful judicial review. And the second is that when the immigration judge and the BIA on appeal treated Outram's lateness as a failure to appear, that also deprived him of judicial review. Do we know that he arrived? He said he arrived, Your Honor. Well, he said it, but did he tell anyone that he was there? It's been in all the pleadings. No one's really disputed it. Well, nobody's proven it either. Well, in the 2255 context, the allegations are taken as true. So I think we have to look at that in that context. Well, since immigration counsel's actions, you agree with this proposition, right? Chronologically, immigration counsel's actions preceded United States v. Perez? Yes? Yes. Okay. So if that's so, then what's the basis for arguing that your ineffective assistance of counsel claim satisfies the deprivation of opportunity for judicial review? Well, because the ineffective counsel is by itself a deprivation of. Yeah, but you're saying that now in 2011, based on a 2003 case, and you're judging the actions of immigration counsel in 93-94? Well, but we're looking at immigration counsel's actions at the time he took them or didn't take them, and for that we look at whether or not he met the reasonable standard of care for a professional. Then in terms of the prejudice, I think whether. That's not correct. It's not a foregone conclusion that ineffective assistance of counsel satisfies the deprivation of the opportunity for judicial review. There are many cases which say that that doesn't satisfy it. I think in your papers I was aware of the Perez case. It seems like it's distinguishable. We can talk about that. It's not a foregone conclusion. Charles Well case says that as well. What does Charles Well say? Charles Well says that if ineffective assistance of an immigration counsel constitutes deprivation of meaningful judicial review for 1326 purposes. Well, Charles Well is certainly distinguishable. No? Let's see. Give me one second. Well, that was a tardiness case in another context, wasn't it? I mean. It was on a petition for review, but I think the substantive holding, I think, should apply here as well. I thought that the holding there was it's not necessarily a deprivation of the right of judicial review, even when there is a monumental error in the proceeding and a person saw no reason to appeal if the person merely decided not to appeal instead of being effectively precluded from appealing an adverse decision. I mean, my understanding of Charles Well is it's a little different than what we're talking about here, because if it did stand for that proposition, then that would be your lead case for the notion that ineffective assistance of counsel satisfies the second prong of 1326. Yes, and apparently we're having a different reading of that, Your Honor. I thought the case was fairly clear on that point. I could move off to a different avenue of proof, and that was that the immigration judge and the BIA both treated the lateness, Uttram's lateness in appearing, as a failure to appear. And this court's case, decision in Cabrera-Perez v. Gonzalez, said that it was a due process violation to treat tardiness as a failure to appear. And this court reached that decision based on a number of other cases in other jurisdictions, the Fifth Circuit, Alarcon-Chavez, the Ninth Circuit, the Girozano case.  And the Seventh Circuit in Nazarroza. In all those cases, they held that if the failure to appear was the basis for dismissal when the alien actually was late, that that was a deprivation of the opportunity for judicial review. I'm sorry. Go ahead. You go. Your position is, I take it, that Mr. Ahmed failed to do what he should have done in representing the petitioner by making the case that the original immigration judge's decision was flawed, that dismissal was flawed, because nobody was there. And I take it your position is that if it be the case, I say if it be the case, because one of the problems in this case, I think, is that we know so few facts as opposed to allegations. If it be the case that Mr. Ahmed awarely simply let his client plead guilty, that satisfied both prongs of Strickland. I agree, Your Honor, and that's why we thought that the district court erred when it dismissed the petition without holding an evidentiary hearing. We think that an evidentiary hearing could produce precisely the kind of information that you say is lacking. And it could do that both not only for Mr. Ahmed and his dealings in federal court, but also going back to Mr. Carlin. But how about what I understood the magistrate judge to have been concluding in his report and recommendation, that whatever claims would be made were being made arising out of Mr. Ahmed's, how shall we say, delict. There was an argument that was foreclosed by what this court had said in its second round of decision in Ultron. There was simply a ruling by this court that there was no deprivation. Well, I argue, I thought pretty strenuously and I agree, that this is a time when the district court gave too much deference to language in a Third Circuit opinion, which... There can't be too much deference. Well, ironically... My definition. A few weeks ago I was arguing the opposite point to Judge Slover in a different case. But here the dicta was problematic for a few reasons. First of all, purely as dicta, it wasn't necessary for the resolution of the case. And dicta is always given some short shrift because of that and because the court tends not to pay quite as much attention, perhaps, as to something that is part of the holding. May I continue, Your Honor? Sure. Is that all right? Yeah, because I have more to add. Yeah, go ahead. The second part that's problematic about the Third Circuit's opinion is that it picked up on something that Mr. Ahmed said during the course of the proceedings and stated it as fact, which was that Mr. Outram failed to appear at the hearing. But that isn't true, at least... What do you mean it isn't true? Was he there? Mr. Outram was there. Oh, Mr. Outram was there. Yes, Mr. Outram was there. And that was part of the basis for the decision in Outram 2 to say, well, there was no fundamental unfairness. Outram didn't appear. So it was the court was mistaken, as a matter of fact. The court in Outram 2? Yes. Now, you made a point a moment ago that the district court followed Outram 2. I thought the district court went to pains to draw a distinction that based on what it had before it, it made a decision independent of that. So let me read specifically from the opinion so that there's no doubt for the record. The district court stated, it's only a two-page opinion, so it's the second page. Having reviewed the record, the court must agree with the government and Judge Smyser, I presume that's how you pronounce it, that the record clearly demonstrates Petitioner could not meet the requirements for collateral attack on his 1993 deportation proceedings. The court will therefore reject Petitioner's arguments to the contrary, which were also rejected and dictated by the Third Circuit in denying his direct appeal of this conviction. So the district court's not relying on that. It sort of mentions it parenthetically or in passing. It independently comes to its own determination. Obviously, you could disagree with that. Well, and the district court had no independent analysis of that point, seemed only to adopt what the magistrate judge had in his report and recommendation. And I think there were some problems with what the magistrate judge ruled. Well, that's a different point. The only point I was talking about is the fact that the district court didn't rely on the dicta in Outram 2. Well, to the extent it didn't, then it was relying on the magistrate judge's report, which was also flawed. No, I'm good. Thank you. Thank you, Your Honor. May it please the court. I am James T. Clancy, Assistant United States Attorney. I represent the United States of America, the appellee in this matter. And Outram's appeal must fail here because no challenge, no collateral challenge to that underlying in absentia deportation order would have been successful. The only basis for a challenge would have been 212C? Is that right? I don't think so, Your Honor. I think any challenge could have attacked any one of the three requirements under 1326D. And those are exhaustion of administrative remedies, the deprivation of the opportunity for judicial review, and fundamental unfairness of the order. Now, there is no dispute that he exhausted his administrative remedies, but he was not deprived of his opportunity for judicial review. He had that opportunity. In this court, there was a motion to reopen when he did not timely show for that immigration hearing. That motion was denied. It was appealed by Mr. Carlin on Outram's behalf to the Board of Immigration Appeals, and that appeal was denied. But then Outram had the opportunity to petition this court for review of the immigration orders, and he chose not to do that. Nothing that happened in the immigration proceedings denied him or deprived him that opportunity. He had the opportunity. He did not avail himself of the opportunity. Mr. Clancy, let me be sure I understand. The government's position is, and I take it you would want this court in an opinion to state, that review would have been of no assistance to the petitioner because he wasn't entitled to any relief. His record was a bad one, and so he never could have gotten discretionary relief of any kind. Is that what the government's position is? I don't think the court has to go that far, Your Honor. I don't think the court has to delve into the question of whether he would have received, been granted, 212C relief. I think the court only needs to go so far as to ask whether the immigration judge and the BIA orders deprived Outram of the opportunity for judicial review, and I think that judicial review would occur in this court, and that's what Cabrera-Perez did, and that's what the aliens in other cases cited by the appellant did. Those were brought in the context of actions in this court to review what happened in the immigration orders, and Outram was not deprived of that opportunity, and I don't think that really has anything to do with the question of whether he would have succeeded in a request for 212C relief. But it does have something to do with whether he had an effective opportunity for judicial review or was sort of misled by inadequate representation. Had he availed himself of the opportunity to petition this court for review of the immigration orders, then at that point there could have been a determination of whether he was given misinformation by immigration counsel below, but he passed up that opportunity. There's nothing in the BIA or the immigration judge's order that deprived him of that opportunity. He just did not avail himself of the opportunity,  of an opportunity for judicial review. The appellant argues that we should have a broader definition of that deprivation, and in trying to establish that broader definition they rely on Perez, and I'd like you to tell us why it shouldn't be expanded based on Perez. Well, as Your Honor pointed out to Mr. Krause, Perez is different from this case. It was brought up by an alien, I believe pro se, in a petition for review, and there was a question of tardiness there. I believe Mr. Perez was 20 minutes late for a hearing, and the immigration judge was still on the bench when that came about. But I think if the court broadens the definition that far, what the practical effect of that will be in this case is the message that any alien at any point can say, my attorney didn't tell me I could file this petition with the Third Circuit, so now I should have the opportunity to do it. I think that opens up a floodgate of petitions from aliens claiming that their lawyers told them one thing or didn't tell them another. And I don't believe it's settled in this circuit that prejudice can be determined by ineffective immigration counsel. The court has not broadened the definition that far, and the government would urge the court not to broaden it farther than it already is. Now, that's one reason why Mr. Ahmad, federal trial counsel for Mr. Outram, that's one reason why Mr. Ahmad, an experienced immigration lawyer, would realize that a collateral attack on that underlying in absentia deportation order would be futile, because the order did not deprive Outram of the opportunity for judicial review here. But the other reason... You know he was an experienced immigration lawyer? Mr. Ahmad actually is. And when the case first started, and I had the enviable position of being in the case from the beginning in federal court, when the case first started, the public defender, Mr. Thornton, was appointed to represent Mr. Outram. And Mr. Thornton ended up withdrawing his appearance because Mr. Outram retained Anzar Ahmad because of his experience in immigration law. And I think Mr. Ahmad, looking at the case, realized, and it's reflected in the record at the second, at the resentencing after Booker, that there was an in absentia deportation order, and Mr. Ahmad raised the specter of 212C relief with Chief Judge Cain. And Mr. Ahmad would have recognized that there were three requirements, all of which had to be met, and that there was no deprivation of the opportunity for judicial review, but also that the order would not be found to be fundamentally unfair. This court has held that fundamental fairness has to do with procedure. And in this case, procedure was followed. There was no procedural due process violation. A hearing was scheduled. And I would suggest that Mr. Outram had to know that hearing was coming because he was present when he was granted bail back in August. And then a week later, a hearing was scheduled, and Mr. Carlin says that's when he sent the first notice. But a procedure was established, a hearing was scheduled, the hearing was held. Mr. Outram is the one who failed to timely appear. And he wasn't 15th, Your Honor? I was going to say, and that was the basis, I take it, for this court's dicta in the second round of appeals. Yes, it was. There was no denial of fundamental fairness, meaning no disrespect to a court that has provisionally adopted me. I'm puzzled as to how much weight was properly given to what has been described by the district court as dicta, and I think also by the magistrate judge. I don't know where the factual record is that supports the dicta, and therefore I'm questioning what weight should be afforded to that. There cannot be too much weight afforded to that, Your Honor, as I heard a few minutes ago. But that was, I think, a statement made that is properly considered dicta, made by a previous panel of this court on which Judge Slobodur participated. But I believe that the district court was citing that as an aside, not to suggest that it was binding or precedential, but to note that this court had taken a look at the question of fundamental fairness and had reached the conclusion that the order was not fundamentally unfair. And the reason why, and this court reviews this matter on a plenary basis and needn't regard the district court's reliance on the previous panel's note of that at all. This court looks at it fresh and can clearly say that the order was not unfair because there was due process. The hearing was scheduled. It was held. Mr. Outram was late. He was not 5 or 10 or 15 or 20 minutes late, as we see in the cases where relief is granted by petitions for review in this court. He was two hours late. And it was appropriate at that time for the immigration judge to find that he was not present at the time of the hearing and to order him deported in absentia. I just want to follow up. Was there some mechanism by which he could have noted his presence, albeit late? I think there probably was, Your Honor. I think he could have gone to court staff and said, I'm here. I know I'm late for whatever reason. And he had the opportunity to explain that in the motion to reopen that was filed on his behalf. Now, at that point, he had the burden of demonstrating exceptional circumstances for his tardiness. But as was found in review of the motion to reopen, there were no exceptional circumstances. He simply said, I just got the notice today and I got here as soon as I could. I cut off Judge Pollack's question or comment. Well, I guess what puzzles me is that the Court of Appeals seems to have concluded that there was no fundamental fairness problem because he got notice and so forth. And that's one of the few facts we know in this case, that he did not appear. But do we know, do we have a basis in fact for saying he did not appear and it was his fault as against he did not appear because, or until two hours late, because his lawyer didn't see to it that he got proper notice, et cetera, et cetera. Well, what we do know and what we can accept are his allegations that he made in the 2255 petition. And if we accept those allegations, that he received the notice on the day of the hearing and that he arrived as soon as he could, I think this court can accept those facts and they were accepted below, but there is a procedure that could be followed for him to pursue the order. The motion to reopen was filed. He could not show what was the legal standard of exceptional circumstances or unusual circumstances for his tardiness. And that was all part of the proper process. He appealed that to the Board of Immigration Appeals and said the same thing. I just found out that day. I got there as soon as I could, but the BIA found that they were not exceptional circumstances. There was nothing said when he had the opportunity to say it that showed exceptional or unusual circumstances. Were you impressed by the quality of Mr. Carlin's representation? As far as we know it? I can't say that my impression matters, Your Honor. I do think it's quite obvious. Are you willing to give it some weight? Well, I don't know that the court has to reach the quality of Mr. Carlin's representation because this court knows that Mr. Outram had the opportunity to petition this court for review of the immigration orders. And because he had that opportunity and did not pursue that opportunity, that is where this court's inquiry can end. What was his best argument? I suppose he had done that. Did he have a winning argument at any point along the line for not having shown up? I don't believe he did, Your Honor. I think he made the best argument he could make. In other words, if you're claiming ineffective assistance of counsel, you're not. He's claiming ineffective assistance. He is claiming it now. Was there any prejudice? If he didn't have a viable argument for 212C, then how can we say his constitutional right was violated? I don't think his constitutional right was violated. I don't think he had a winning argument for 212C relief. He had the opportunities available to him that every petitioner did. He simply failed to make those opportunities work for him. And because he cannot meet the three requirements necessary for 1326D, I don't think the court can begin to find that Mr. Ahmad was ineffective for not pursuing a collateral attack on that underlying order. Will you answer the question that I posed to your colleague? In our analysis, it begins with 1326, and then if those three prerequisites are met, then we can get to the substance of the ineffective assistance? What's your view? I think the court has to begin with Strickland. The court first has to determine was there ineffectiveness and did that ineffectiveness result in prejudice? But in order to do that in this kind of case, the court has to immediately go to 1326D because that is the gate to that determination. Do you think we've got facts enough so that we can confidently make a decision one way or another? Absolutely, Your Honor. I believe you do. And the facts that you would rely on are the record facts that he didn't get there until two hours late. If at all. Yes. If at all. But even if we can accept, I think this court can accept the allegation that he made, I got there that day two hours late. And I don't think that is of trouble to this court's analysis at all because I think the real question is, having gotten there late and filed a motion to reopen and then an appeal to the BIA, did he then take advantage of his next judicial review opportunity, which was a petition for review with this court? And that's where he falls down and that's why he has to fail in this appeal. Thank you. Thank you. Thank you. Do you have any questions? Oh, not really. Just a few quick points. First of all, on the issue that Mr. Outram should have appealed to the federal courts after the denial from the immigration authorities, that's premised on a fact that we don't have an evidence here. Well, the fact that we have an evidence to the contrary, that he had competent counsel. It's premised on Mr. Carlin's advising him to file in federal court. We don't know whether he did or whether he didn't, and so at worst that's one more fact that could be very usefully discovered in an evidentiary hearing. Secondly, with respect to the Outram II's decision, there was something else I noted, looking at it actually this morning, where the court said that because he didn't appear, this was not a denial of due process. It goes on to say, further we note that Outram does not appear to contest the facts underlying the removal order. That's problematic to me because that is completely irrelevant to Mr. Outram. He was looking for a 212C waiver. The facts underlying the removal order really were irrelevant to that point. On what possible ground could he have had for a 212C waiver? I mean, you have to give us something plausible. Yes. Well, first of all, we do have an unrebutted expert witness, an attorney, an expert in immigration authorities who was not objected to and who is recognized, at least on the stationery. And who showed what, approved what, or stated what? She is considered as specializing in immigration law. Yeah, but stated what? I mean, what was the matter? Well, what she said was, first of all, that he was eligible for a 212C waiver. Everybody is eligible for it. I mean, you can be the worst aggravated felon. You're eligible to file for 212C. Yes. You won't get it, but you're eligible. In her opinion, the negative, of course, in determining that, the court looks at negative factors and positive factors. Were there any positive factors on his side? Yes. He was a longtime resident of the United States. He came here when he was 11. And he was a longtime criminal, too. Well, he did have two criminal convictions, Your Honor. That's true. And he did try to get in unsuccessfully in 01 or 02. All true. But he also had other positives. As I said, he was a longtime resident. He had siblings. Because they didn't catch him. I mean, he was a longtime resident. Because he was here. They didn't get him out here. Well, Your Honor, he came here when he was 11 years old, originally, as a permanent resident. So that's not an issue. He had, as I said, he had siblings. He had parents. He had children. Why is that a positive factor, to have siblings? Well, those are the factors that the BIA in the Marin case, which I said in my brief, have set forth as various factors that the court should be looking at. And also another factor of significance is that the crimes he was convicted of were not violent crimes. So based on all these factors, the immigration law expert opined that there was a very reasonable, I believe she put it, high probability that an immigration judge would have granted a 212C waiver. And that's in the context of some other material that I provided in the brief, stating that the 212C waivers were granted fairly liberally. And there's no reason to think that he would not have received this. There's no reason to think that he would have either, frankly. Well, we have unrebutted expert opinion saying he would have. I probably have seen as many cases, 212C cases, as she has. And I can't think of any that would have. Well, go ahead. I'm not the expert on record. That's all I have to say. Thank you. Thank you. Thank you, counsel. We'll take the matter under advisement.